IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARINA KOLCHINSKY )
and LIDIA KOLCHINSKY, )
 )
      Plaintiffs, )
 )
vs. )   Case No. 15 C 10544
 )
WILLIAM BENTLEY, BILL )
BENTLEY TRUCKING LLC, )
WESTERN DAIRY TRANSPORT, )
LLC, and WD LOGISTICS, LLC, )
 )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Marina Kolchinsky and Lidia Kolchinsky have sued William Bentley, Bill Bentley Trucking LLC, Western Dairy Transport LLC, and WD Logistics LLC for negligence, seeking to recover for injuries the Kolchinskys suffered in a collision on October 5, 2014 between a truck driven by Bentley and a car they occupied. The Court's jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(a). *See* Pl.'s Resp. to Defs.' L.R. 56.1 Stat. (dkt. no. 150) ¶ 6.

    At the time of the collision, Bentley was driving a tractor hauling an empty trailer, after dropping off a load in Minnesota. The tractor was owned by Bentley Trucking, of which Bentley was the owner and sole employee. The trailer was provided by WD Logistics, and it bore Western Dairy Transport logo. Bentley was instructed on where to

haul the trailer by, he testified, Western Dairy Transport. See Pl.'s Ex. 9 (Bentley 2018 Dep.) at 12.

It appears that Bentley and Bentley Trucking hauled trailers exclusively, or almost exclusively, on Bentley Trucking's contract with WD Logistics. All of the trailers bore Western Dairy Transport logo and belonged to Western Dairy Transport. Bentley Trucking and WD Logistics were parties to a "carrier/broker agreement" that, among other things, required Bentley Trucking to haul all freight tendered by WD Logistics unless WD Logistics agreed otherwise. Bentley testified that at the time, "I was an owner-operator leased to Western Dairy," Pl.'s Ex. 8 (Bentley 2016 Dep.) at 23, and he was working only for Western Dairy, *id.* at 28, though it's not entirely clear from the testimony exactly which entity he was referring to when he used the term Western Dairy. From Bentley's testimony, the line between WD Logistics and Western Dairy Transport appears to have been a bit blurry (they were affiliated entities with the same owner, operating out of the same location).

Generally speaking, a person injured by another's negligence must seek her remedy from the person who caused the injury. *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1056, 946 N.E.2d 463, 470 (2011) (citing *Darner v. Colby*, 375 Ill. 558, 560, 31 NE.2d 950, 951 (1941)). But under the doctrine of *respondeat superior*, a principal may be held liable for its agent's negligence that caused a plaintiff's injury even if the principal itself was not negligent. *Woods v. Cole*, 181 Ill. 2d 512, 517, 693 N.E.2d 333, 336 (1998).

The Kolchinskys argue that WD Logistics and Western Dairy Transport were operating as a joint venture; Bentley Trucking was acting as their agent at the time of

2

the collision; and Bentley was acting as Bentley Trucking's agent. *See* Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. at 1. The Court need not address the joint venture contention, because the Kolchinskys' agency argument lacks merit. No reasonable jury could find that Bentley Trucking was an agent of the alleged Western Dairy-WD joint venture; rather, the evidence indicates that Bentley Trucking was an independent contractor.

Although a principal is vicariously liable for its agent's conduct, it is not liable for the conduct of an independent contractor. *Petrovich v. Share Health Plan of Ill., Inc.*, 188 Ill. 2d 17, 31, 719 N.E.2d 756, 765 (1999). (The Kolchinskys do not argue that either of the exceptions to this rule—when the act was pursuant to a direction of the principal, or the principal did not exercise reasonable care in selecting a careful contractor, *see Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 9, 816 N.E.2d 272, 276 (2004)—applies in this case.) The difference between an agency relationship and an independent contractor relationship involves the level of control over the manner of work performance. *Horwitz*, 212 Ill. 2d at 13, 816 N.E.2d at 279. Agency is a consensual relationship in which a principal has the right to control the agent's conduct and the agent has the power to affect the principal's legal relations. *Sperl*, 408 Ill. App. 3d at 1057, 946 N.E.2d at 470. "An independent contractor is one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified and without his being subject to the orders of the person for whom the work is done in respect to the details of the work." *Id.* (internal quotation marks, ellipsis, and brackets omitted).

The agreement between WD Logistics and Bentley Trucking stated that Bentley Trucking was an independent contractor and not an agent, but the parties' labels are not dispositive. *Sperl*, 408 Ill. App. 3d at 1057, 946 N.E.2d at 471. The key consideration is determining whether a person is an agent or an independent contractor is the right to control the manner of work performance, regardless of whether that right was exercised. *Id.* Another significant factor "is the nature of work performed in relation to the general business of the employer." *Id.* at 1057-58, 946 N.E.2d at 471. "Other factors to consider are: (1) the right to discharge; (2) the method of payment; (3) the provision of necessary tools, materials, and equipment; (4) whether taxes are deducted from the payment; and (5) the level of skill required." *Id.* at 1058, 946 N.E.2d at 471.

In their brief, the Kolchinskys focus only on the key issue of control over the manner of work performance. They cite the following. Bentley Trucking was hauling exclusively for Western Dairy/WD Logistics; WD Logistics provided the trailer that Bentley was hauling at the time of the collision (and the trailer had Western Dairy's logo on it); Bentley had to call WD Logistics each morning to check in, had specific times for pickup and drop-off, and had to call if there were anticipated delays; there likely was a GPS monitoring device on the trailers that Bentley hauled, placed by WD Logistics or Western Dairy; WD Logistics had the ability to terminate its agreement with Bentley Trucking at any time; and Bentley Trucking had to get advance approval for extra charges in advance. *See generally* Pl.'s Ex. 1 (broker-carrier agreement), App'x B.

None of this, however, indicates any degree of control by WD Logistics/Western Dairy over the manner of Bentley Trucking's performance of the work. The case is, in this regard, similar to *Dowe v. Birmingham Steel Corp.*, 2011 IL App (1st) 091997, ¶ 32,

963 N.E.2d 344, 352, in which the court concluded that the trucker was an independent contractor of the shipper, not its agent. The fact that the WD/Western wanted to know whether their loads would be delivered on time and keep track of their location does not suggest direction or control over how Bentley Trucking carried out the work of hauling trailers and loads from one location to another. *See Scheinman v. Martins' Bulk Milk Serv., Inc.*, No. 09 C 5340, 2013 WL 6467525, at *10 (N.D. Ill. Dec. 9, 2013) (collecting cases). And the fact that Bentley Trucking appears to have been hauling loads only for WD/Western Dairy would not permit a reasonable jury to find that he was their agent, even with the other factors cited. In this regard, this case is similar to *Dowe*, in which (as indicated) the court determined that the relationship was that of an independent contractor, not an agent. Indeed, an argument can be made that WD/Western had a more hands-off relationship with how the work was done than the shipper in *Dowe*. In that case, the fact that the driver was doing a large volume for the shipper, considered himself the "house truck" for the shipper, loaded the truck under the shipper's written rules governing the conduct of drivers at its facility, and could be terminated by the shipper if not driving safely was insufficient to permit a reasonable inference of an agency relationship. *Id.* ¶¶ 32-33, 963 N.E.2d at 351-52. "None of these factors gave [the shipper] the authority to control the manner in which" the driver hauled the load to its destination. *Id.* ¶ 33, 963 N.E.2d at 352. The same is true here. *See also Petersen v. U.S. Reduction Co.*, 267 Ill. App. 3d 775, 783, 641 N.E.2d 845, 851 (1994) (shipper's providing of trailers in which load was to be hauled was "an insignificant retention of control" over the manner of work). In this case as in *Dowe*, Bentley Trucking chose the

5

route it would take, controlled its own hours, and provided the tractor, and Bentley was paid by Bentley Trucking, not by WD/Western.

This case is not similar to *Sperl*, the case upon which the Kolchinskys rely the most heavily. In *Sperl*, the appellate court concluded that there was a reasonable basis supporting a finding of an agency relationship and thus declined to overrule a finding of vicarious liability against the defendant, a logistics company that provided transportation-related services. In *Sperl* as in this case, the driver had to pick up the load at a specified time and make check-in calls with the defendant. But there was much more: the driver had to "stay in constant communication" with the defendant's dispatchers; she was required to follow special instructions concerning the load she was hauling; she "was required to continuously measure the temperature of the load during her trip" and had to call the defendant immediately if it did not meet a certain temperature; and the defendant "enforced its special instructions with a system of fines." *Sperl*, 408 Ill. App. 3d at 1058, 946 N.E.2d at 471-72. The defendant's requirements effectively required the driver to violate federal regulations regarding the hours a truck driver can drive in a day in order to deliver her load on time, as she would be fined for late delivery. *Id.* at 1058, 946 N.E.2d at 472. These requirements and the fine-based enforcement, the court concluded, "directed [the driver's] conduct during the entire transportation process," thus supporting the finding that the defendant had the right to control the manner in which the driver performed her job. *Id.* The same is not true in this case.

For these reasons, the Court concludes that no reasonable jury could find that Bentley Trucking was an agent of WD Logistics/Western Dairy, as opposed to an

route it would take, controlled its own hours, and provided the tractor, and Bentley was paid by Bentley Trucking, not by WD/Western.

This case is not similar to *Sperl*, the case upon which the Kolchinskys rely the most heavily. In *Sperl*, the appellate court concluded that there was a reasonable basis supporting a finding of an agency relationship and thus declined to overrule a finding of vicarious liability against the defendant, a logistics company that provided transportation-related services. In *Sperl* as in this case, the driver had to pick up the load at a specified time and make check-in calls with the defendant. But there was much more: the driver had to "stay in constant communication" with the defendant's dispatchers; she was required to follow special instructions concerning the load she was hauling; she "was required to continuously measure the temperature of the load during her trip" and had to call the defendant immediately if it did not meet a certain temperature; and the defendant "enforced its special instructions with a system of fines." *Sperl*, 408 Ill. App. 3d at 1058, 946 N.E.2d at 471-72. The defendant's requirements effectively required the driver to violate federal regulations regarding the hours a truck driver can drive in a day in order to deliver her load on time, as she would be fined for late delivery. *Id.* at 1058, 946 N.E.2d at 472. These requirements and the fine-based enforcement, the court concluded, "directed [the driver's] conduct during the entire transportation process," thus supporting the finding that the defendant had the right to control the manner in which the driver performed her job. *Id.* The same is not true in this case.

For these reasons, the Court concludes that no reasonable jury could find that Bentley Trucking was an agent of WD Logistics/Western Dairy, as opposed to an

independent contractor. WD Logistics and Western Dairy are therefore entitled to summary judgment.

## Conclusion

For the reasons stated above, the Court grants the motion for summary judgment by Western Dairy Transport, LLC and WD Logistics LLC [dkt. no. 129]. All claims against those defendants are dismissed. At tomorrow's status hearing, counsel for the remaining parties should be prepared to discuss a schedule for any further pretrial proceedings, as well as a trial date.

Date: February 3, 2019

_____
MATTHEW F. KENNELLY
United States District Judge