**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARINA D. KOLCHINSKY and** | ) | |
| **LIDIA L. KOLCHINSKY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 10544** |
| | ) | |
| **WILLIAM G. BENTLEY and** | ) | |
| **BILL BENTLEY TRUCKING, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

On October 5, 2014, Marina Kolchinsky and her mother, Lidia Kolchinsky,[1] were

severely injured in a motor vehicle collision involving their rental car and a tractor-trailer.

They sued the tractor-trailer driver, William G. Bentley, and his company, Bill Bentley

Trucking, LLC, alleging negligence, and in later iterations of their complaint they added

as defendants Western Dairy Transport, LLC and WD Logistics, LLC. The latter two

defendants prevailed on summary judgment, and that ruling was affirmed on appeal.

The plaintiffs[2] have reached a settlement agreement with the remaining defendants.

They have submitted a petition asking this Court to approve the settlement, in the

amount of $1,000,000, which represents the full insurance policy limit applicable in this

case. Several attorneys serially retained by the plaintiffs under contingency fee

---

[1] The Court will refer to each of the Kolchinskys by her first name to avoid the need to
repeat their full names.

[2] Marina Kolchinsky passed away on April 9, 2020. One of her adult sons, Arie Leib
Porush, has been appointed as the special administrator of her estate.

agreements assert that they are entitled to the full contract amount of one-third (33–1/3%) of the $1,000,000 settlement in this case as well as expense reimbursement. Each attorney has moved to recover fees and expenses.

### Factual background

The Court assumes familiarity with the case's factual and procedural background, which the Court has described in its prior written opinions. *See Kolchinsky v. Bentley*, No. 15 C 10544, 2019 WL 423372 (N.D. Ill. Feb. 3, 2019) (*Kolchinsky II*); *Kolchinsky v. Bentley*, No. 15 C 10544, 2018 WL 10741494 (N.D. Ill. May 31, 2018) (*Kolchinsky I*). The following is a brief synopsis of the factual and procedural background, as relevant for the purposes of the present order.

In October 2014, a tractor-trailer operated by William G. Bentley, the owner and sole member of Bill Bentley Trucking, LLC, rear-ended the plaintiffs' Hertz rental car and left them severely injured. On November 23, 2015, the plaintiffs, Marina Kolchinsky and her mother, Lidia Kolchinsky, sued Bentley and his company (together, the "Bentley defendants"), alleging negligence. They later amended their complaint to add as defendants the companies that contracted with Bentley: Western Dairy Transport, LLC and WD Logistics, LLC. The Court granted summary judgment in favor of the latter two defendants, leaving only the Bentley defendants. *Kolchinsky II*, 2019 WL 423372, at *3. The plaintiffs then reached a $1,000,000 settlement with the Bentley defendants. On September 11, 2020, the plaintiffs filed a petition for the Court to approve it. Court approval is required because one of the plaintiffs is a deceased person's estate.

During the course of the litigation—in Wisconsin state court and this Court—the plaintiffs serially retained four different attorneys and law firms, including (1) Jay Urban

2

of Urban & Taylor S.C., who represented only Marina; (2) Joseph Shannon of Shannon Law Group PC, who represented only Lidia; (3) Todd Korb of Hupy & Abraham S.C.; and (4) Eugene Bykhovsky of Bykhovsky Law, LLC. Urban and Shannon represented the plaintiffs in a pre-suit discovery action filed in Wisconsin state court; Korb and Bykhovsky represented the plaintiffs in this federal lawsuit. More specifically, Korb filed the present suit; he was later replaced by Bykhovsky; and he was later rehired to replace Bykhovsky. Korb, an attorney with the Hupy firm, negotiated the settlement that the plaintiffs have now requested this Court to approve. Each of the lawyers the plaintiffs retained asserts that he is entitled to 1/3 of the plaintiffs' recovery—about $333,333—as well as reimbursement for expenses, except for Shannon, who only seeks one-third of Lidia's recovery.

**1.    Attorneys Urban and Shannon**

Marina hired attorney Jay Urban, founder and principal of Urban & Taylor in October 2014, shortly after the accident. Due to a perceived potential conflict of interest between the two plaintiffs, Urban referred Lidia to Joseph Shannon, founding partner of the Shannon Law Group. Lidia hired Shannon in February 2015.

Urban did not file the present lawsuit. He initiated a proceeding in Wisconsin state court to enable the plaintiffs to obtain discovery. That proceeding resulted in the production of numerous documents, including the Bentley defendants' insurance coverage, the vehicle rental agreement, and the Illinois traffic crash report. Shannon and Urban worked together on the state court discovery action and determined that the limit of liability insurance coverage was $1,000,000 for both plaintiffs' claims.

Shannon has submitted a time sheet that indicates he billed 23.25 hours

representing Lidia—meeting with the plaintiff, requesting and scanning her medical records, submitting a FOIA request to the U.S. Department of Transportation, conducting other research on the driver, and corresponding with Urban and his law firm. Shannon Law Grp., P.C.'s Reply, Ex. 1 (dkt. no. 236-2).

Urban, in contrast, has not submitted any time records or other evidence of his activities in representing Marina. In connection with an earlier submission, however, Korb submitted a report provided by Urban listing his expenses, which totaled $6,556.37, including an expert retainer fee, travel, postage and shipping, and parking. Mot. for Declaratory Ruling, Korb Affid., Ex. E (dkt. no. 47-3, ECF p. 88 of 88).

In October 2015, about a month before filing the instant lawsuit in federal court, the plaintiffs discharged Urban and Shannon. Urban claims that he is entitled to an award of attorney's fees in the amount of one-third of the settlement between the plaintiffs and the Bentley defendants, while Shannon claims only one-third of Lidia's recovery. In the alternative, they seek a *quantum meruit* award, that is, an award reflecting the reasonable value of their services.

2. **Attorney Korb**

Immediately after discharging Urban and Shannon, the plaintiffs hired Todd Korb. Korb obtained the "blackbox" data from the Kolchinskys' rental car (computer-stored data that encapsulates the details of a vehicle crash event), filed this lawsuit—including two amended complaints—against the Bentley defendants, conducted discovery and disclosures, including depositions of key witnesses and the parties, and engaged experts. Korb obtained a $1,000,000 policy limits settlement offer from the Bentley defendants on April 7, 2017. Korb recommended that the plaintiffs accept the offer. He

4

discouraged them from pursuing a claim against Western Dairy and WD Logistics because in his view such a claim was unlikely to succeed.  The plaintiffs rejected Korb's advice:  they decided not to accept the offer, and they ultimately fired Korb.

The plaintiffs hired a new attorney in October 2017:  Eugene Bykhovsky.  They enlisted him to attempt negotiate a larger settlement amount from the Bentley defendants, despite the insurance policy limit, and to pursue claims against Western Dairy and WD Logistics.  In December 2017, they formally discharged Korb.

### 3.    Attorney Bykhovsky

Korb was still formally representing the Kolchinskys in October 2017 when they first engaged Bykhovsky.  In February 2018, about two months after the plaintiffs discharged Korb, Bykhovsky filed a third amended complaint, naming WD Logistics and Western Dairy as defendants—and sought a greater amount from the Bentley defendants.  He also conducted discovery relating to the new defendants.  In February 2019, the Court granted WD Logistics and Western Dairy's motion for summary judgment.  *See Kolchinsky II*, 2019 WL 423372, at *3.  In January 2020, the Seventh Circuit affirmed this Court's decision.  *See Kolchinsky v. Western Dairy Transport, LLC*, 949 F.3d 1010 (7th Cir. 2020).

A few months later, on April 9, 2020, Marina passed away.  Shortly thereafter, Marina's estate and Lidia discharged Bykhovsky and rehired Korb.  Bykhovsky asserts that he billed 188.4 hours representing both plaintiffs, amounting to $52,590 in fees based on a rate of $300 per hour for legal services and $150 per hour for travel, plus expenses of $2,120.17.  He contends that he is entitled to the entire contingency fee contract amount of one-third of the settlement based on his representation of the

plaintiffs before this Court.

### 4. Attorney Korb (again)

In May 2020, after Marina passed away, the plaintiffs re-hired Korb and the Hupy firm. Shortly thereafter, Korb negotiated a $1,000,000 settlement with the Bentley Defendants. Korb, on behalf of the Hupy firm, claims that the twice-obtained policy limits settlement offer is attributable to his firm's services. Accordingly, he asserts that the firm is entitled to the full contingency contract amount of one-third of $1,000,000 as well as reimbursements for expenses totaling $32,148.60.

### Discussion

It is well-settled under Illinois law that a client may discharge her attorney at any time with or without cause. *See DeLapaz v. SelectBuild Const., Inc.*, 394 Ill. App. 3d 969, 973, 917 N.E.2d 93, 96 (2009). When a client fires her attorney, any contingency fee agreement that would otherwise govern ceases to exist and the contingency terms are therefore no longer operative. *Id.* "A discharged attorney, however, is entitled to payment for the services prior to discharge on a *quantum meruit* basis," which literally means "as much as he deserves." *Id.* (internal quotations omitted). A court assesses several relevant factors to determine a *quantum meruit* fee award, including:

> (1) the skill and standing of the attorney employed; (2) the nature of the cause, (3) the novelty and difficulty of the subject matter; (4) the attorney's degree of responsibility in managing the case; (5) the usual and customary charge for that type of work in the community; (6) the time and labor required; (7) the benefits resulting to the client.

*Will v. Nw. Univ.*, 378 Ill. App. 3d 280, 304, 881 N.E.2d 481, 504-05 (2007). "In some cases," however, "it is possible for someone to receive services and yet not be enriched in a tangible way at all." *In re Estate of Callahan*, 144 Ill. 2d 32, 41, 578 N.E.2d 985,

989 (1991). Ultimately, "[t]he burden of proof is on the attorney to establish the value of his services," and the trial court "has broad discretionary powers in awarding attorney fees." *Id.* at 43-44, 578 N.E.2d at 990.

The plaintiffs, through attorney Korb, have petitioned the Court to approve a settlement of $1,000,000 with the Bentley defendants. The settlement amount has been allocated two-thirds to Marina's claim and one-third to Lidia's claim. The plaintiffs ask the Court determine how to distribute from that sum any attorney's fees and reimbursement of costs and expenses. Pls.' Pet. to Approve Settlement at 8 (dkt. no. 231).

Attorneys Urban, Korb, and Bykhovsky each contend that they are entitled to the full contingency fee contract amount of one-third of the $1,000,000 settlement in this case, while Shannon claims one-third of the recovery to Lidia, based on the legal services they each rendered to the plaintiffs under contingency fee agreements. The plaintiffs, who are this point are again represented by Korb and the Hupy firm, contend that the Hupy firm is entitled to attorney's fees equal to one-third of the total settlement, or $333,333.00. The plaintiffs object to $5,494.23 of Urban's claimed costs, which total $6,556.37, and to $196 of Bykhovsky's claimed costs, which total $2,316.17 (the $196 is a court admission fee for the Seventh Circuit). Regarding Shannon's claimed costs, the plaintiffs' petition describes his potential claim for reimbursement as "presently unknown." Pls.' Pet. to Approve Settlement at 9. None of the materials Shannon submitted to the Court—including the brief regarding his petition for attorney's fees, an affidavit, and an expense sheet—indicate that he is seeking reimbursement for costs.

7

1.      **Korb**

In his motion for an award of attorney's fees, attorney Korb, who negotiated the original $1,000,000 settlement offer in April 2017 before the plaintiffs discharged him and again obtained the $1,000,000 settlement agreement with the Bentley defendants in 2020 after the plaintiffs rehired him, asserts that the full 33.33% contingency fee should be awarded to the Hupy firm because the settlement offers are entirely attributable to his work.

Under Illinois law, "[i]f an attorney performed much of the work on a case before discharge and a settlement immediately follows the discharge, the factors used to determine a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." *Will*, 378 Ill. App. 3d at 304, 881 N.E.2d at 505 (internal quotations and citations omitted). No other attorney filed a brief specifically objecting to Korb's contention, but with the exception of Shannon they each submitted briefs in support of the assertion that they are entitled to the very same award. For the reasons stated below, the Court concludes that an award of the contract amount to the Hupy firm, less *quantum meruit* fees to attorneys Urban and Bykhovsky, is appropriate.

The record reveals that Korb and the Hupy firm dedicated significant time and labor to this case, which benefited their clients. They filed this lawsuit and represented the plaintiffs for the bulk of the litigation, secured witness testimony and retained experts, conducted discovery (including several depositions), and obtained, twice, settlement offers for the $1,000,000 limit of the Bentley defendants' insurance policy. In total, the firm "devoted a minimum of 385.75 hours" to the case, with Korb dedicating "a minimum" of 282.25 of those hours. Hupy and Abraham, S.C.'s Brief in Support of Mot.

for Att'y Fees and Costs at 14 (dkt. no. 223).

Although attorney Urban contends that he negotiated a settlement offer with the Bentley defendants before the plaintiffs discharged him, his contention is unsupported by the record: the plaintiffs did not obtain a formal settlement offer until two years after Urban's discharge. As Urban himself indicates in his opening brief, he did not obtain a formal settlement offer from the Bentley defendants. Urban's Mot. for Partial Summ. J. at 9 (dkt. no. 215) ("no offer was formally extended before U&T was discharged"). In short, the discharged attorneys did not obtain a settlement offer from the Bentley defendants or otherwise provide legal services comparable to Korb's representation. Accordingly, Korb and the Hupy firm are entitled to an award of the entire contract fee less a reasonable amount based on the other attorneys' legal services. The firm is also entitled to recover $32,148.60 in expenses.

### 2. Urban, Shannon, and Bykhovsky

The Court next addresses the claims of the discharged attorneys, Urban, Shannon, and Bykhovsky. Under Illinois law, the "best method" to calculate the reasonable value of a discharged attorney's services is "the amount of total time spent on cases in performing legitimate services for the client and then multiplying that time by a reasonable hourly rate." *Johns v. Klecan*, 198 Ill. App. 3d 1013, 1021, 556 N.E.2d 689, 694 (1990); *accord Vance v. Gallagher*, No. 02 C 8249, 2006 WL 2460611, at *2 (N.D. Ill. Aug. 21, 2006) ("A discharged attorney is entitled only to a reasonable fee for services rendered before discharge, which is often determined by multiplying the reasonable hourly rate for the services by a reasonable number of hours provided by the attorney."). The Court's analysis below reflects the computation of total time each

9

attorney spent on the case multiplied by a reasonable hourly rate.

### a. Urban

Urban argues that he is entitled to the entire contingent fee less the reasonable value of the other lawyers' services totals. The Court overrules this argument. First, Urban only represented one plaintiff, and cites no authority, nor is the Court aware of any, suggesting that his representation of Marina would entitle him to recover a percentage of the total paid to *both* plaintiffs. Urban contends that the original $1 million settlement offer "immediately follow[ed] [his] discharge," but he has offered no evidence to support this, or evidence that he performed a significant amount of the overall "work on [the] case before discharge." *See Will*, 378 Ill. App. 3d at 304, 881 N.E.2d at 505 (internal quotations and citations omitted). In fact, Urban has produced no evidence of the time he spent on the case, description of litigation activities he performed (such as conducting depositions or directing experts to authorize reports) or even an applicable billing rate. Under the circumstances, Urban's contention that his firm "devoted several hundred hours" to Marina's case is unavailing, and his statement that he "is prepared to submit an itemization of the work completed" falls far short of what he needed to do in order to attempt to sustain his claim. Urban's Mot. for Partial Summ. J. at 11. Urban had ample opportunity to submit evidence to support his position, but he offered nothing. He has not carried the burden of establishing the reasonable value of his services. *Callahan*, 144 Ill. 2d at 43-44, 578 N.E.2d at 990.

Furthermore, the report of expenses that Urban submitted includes questionable outlays, including $511.20 in travel that preceded the plaintiffs' accident (dated September 10, 2014), $1,009.03 in travel to Texas for a legal seminar, a $3,500 expert

10

retainer fee that the expert refunded, and a $474 deposition fee for a deposition that never took place. *See* Urban Reply Aff. at 1 (dkt. no. 56) ("Mr. Napier was one of the experts that I was scheduled to meet with in Texas when we were discharged shortly after, but he had to cancel his appearance at our joint seminar and meeting."). The Court declines Urban's request for reimbursement of these expenses. Accordingly, although Urban's expense sheet reflects $6,556.37 in costs, he is only entitled $1,062.14.

### b. Shannon

Although Shannon indicated that his law firm billed 23.25 hours—including work by partners, associates, and paralegals—the legal services and expense report reflect a limited contribution on his firm's part, save for a FOIA request for the driver's company vehicle records. Shannon Law Grp., P.C.'s Pet. for Award of Atty's Fees, Shannon Aff. ¶ 6 (dkt. no. 229-1); Shannon Law Grp.'s Reply at 13 (dkt. no. 236). Furthermore, as stated previously, Shannon does not seek reimbursement for any expenses. Nevertheless, based on the hourly rate Shannon has provided ($350/hour for partner services; $200/hour for associates; and $75/hour for paralegals), his firm is entitled to $6,062.50 for some of the legal services he provided—including reviews of Lidia's medical records, obtaining the crash report, and a handful of other activities described in the expense report. Shannon Law Grp.'s Reply at 13.

### c. Bykhovsky

Bykhovsky contends that his involvement in the litigation—including an appeal to the Seventh Circuit—entitles him to a contingency fee of one-third of the plaintiffs' total recovery and that the plaintiffs "granted [him] a lien . . . against any recovery made in

connection with this claim." Bykhovsky Mot. for Award of Fees and Costs at 2 (dkt. no. 219). Korb contends that Bykhovsky's contingency fee contract is illegal as a matter of public policy and that he is therefore barred from any recovery at all. Specifically, Korb takes issue with "Bykhovsky's attempt at a 'hybrid' contingent-and-fixed fee agreement." Hupy and Abraham's S.C.'s Brief in Opp. at 3 (dkt. no. 233). But there is no evidence that Bykhovsky negotiated a "hybrid" or mixed fee agreement with the plaintiffs or that he modified the agreement from a contingency contract to one based on an hourly rate. Rather, it appears that Bykhovsky's agreement offers an alternative method a court can use to determine adequate compensation—an hourly fee based upon a $300 rate—for a single, limited circumstance: if "the Court with jurisdiction over the Client's claim determines not to apply the contingency percentage methodology to determine the Attorney's fees." Bykhovsky Decl., Exs. 1, 2 at 1-2 (dkt. no. 220-1). In any event, Korb's argument is unavailing. He fails to cite any Illinois case law or other relevant authority indicating that Bykhovsky's agreement violates ethical rules, and the cases he string-cites do not establish that Bykhovsky's agreement violates Illinois public policy. The Court is not persuaded that Bykhovsky's contract with the plaintiffs is unenforceable or otherwise bars him from obtaining *quantum meruit* compensation.

Although Bykhovsky neither obtained a higher settlement from the Bentley defendants nor prevailed against the Western Dairy defendants, the Court concludes he is entitled to *quantum meruit* fees based on the 188.4 hours he billed representing both plaintiffs. To explain this, the Court must delve further into the history of Bykhovsky's involvement in the case. Back in the latter part of 2017, the Kolchinskys were seriously dissatisfied both with Korn and with the settlement offer that he had secured. They

believed that they were entitled to recover, and could recover, much more. Korb believed—accurately, it turns out—that this was not so. Indeed, Korb had enough concern regarding the plaintiffs' mental states that he sought an appointment of a guardian *ad litem* for them to make the decision on settlement. Though the Court denied the motion after holding a hearing, it cannot fault Korb for filing it. It reasonably appeared to him that the plaintiffs were risking harm to their own financial interests by turning down the $1 million policy-limits settlement offer. The Court concluded, however, that the facts and the law did not support appointment of a guardian for the plaintiffs. The Court also concluded that the plaintiffs were legally entitled to turn down the settlement offer and try to fight for more, whether from separate assets that they believed Bentley might have or from other potential defendants. The plaintiffs were unreasonable and bull-headed—a characterization the Court does not make lightly and that it draws from its close, firsthand observation of them—but it was their case, not their lawyers' case. Following the Court's denial of the guardian *ad litem* motion, the plaintiffs burned their bridges with Korb and the Hupy firm (temporarily, it turns out) and retained Bykhovsky to fight for a greater recovery. Bykhovsky performed significant legal services in an attempt to achieve his clients' desired goal.

Korb contends that Bykhovsky's acceptance of the engagement was a fool's errand and that he should not be able to recover any fees, because he did not contribute to the ultimate outcome—the same $1,000,000 settlement that Korb had negotiated earlier. This assumes that the only gain that one can obtain from a lawsuit is money. The Court's forty years of experience at the bench and bar counsels otherwise. Some plaintiffs are seeking just money (which is perfectly fine, of course); others are

13

seeking satisfaction or justice; some are seeking to make a point; and many are seeking some combination of these. The point is that a positive and satisfying outcome to a lawsuit can come in many ways, not just by way of a settlement check. The Kolchinskys wanted satisfaction and were fully aware—as the Court painstakingly explained to them—that they might not get anything more if they continued to fight. Despite this, they chose to discharge Korb and hire Bykhovsky. Though Bykhovsky did not garner a larger settlement, he dedicated significant time and labor and fought as hard as he could to expand liability to the other defendants that the Kolchinskys held responsible for their serious injuries. In this way, even though he did not obtain any more money, he obtained a measure of satisfaction for his clients. Under the circumstances, there is no basis, and it would be wholly unjust, to deny Bykhovsky any recompense for his work. This Court's "close observation" of Bykhovsky's work reveals that it had significance, which entitles him to compensation. *See Wegner v. Arnold*, 305 Ill. App. 3d 689, 693, 713 N.E.2d 247, 250 (1999) ("The trial judge has broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case.").

For the reasons just described, the Court is strongly tempted to take the *quantum meruit* fees for Bykhovsky not out of Korb's fees but instead out of the plaintiffs' recovery—in other words to award Bykhovsky fees over and above what Korb has earned. Given the history of the plaintiffs' retention of Kolchinsky, this would not be in the least bit unjust: they wanted to fight on despite long odds of success, so they should pay for it. But no one has advocated for this, nor has any of the disputants

14

offered any authority that would permit it.

Based on his $300 hourly rate ($150 for travel), Bykhovsky is entitled to $52,590 for the 188.4 hours he spent representing the plaintiffs. *See* Bykhovsky 's Mot. for Award of Fees and Costs at 5; *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 420 (7th Cir. 2015) (suggesting that a billing rate of $300 for partners in a personal injury case is consistent with the prevailing market rate in Illinois). Furthermore, because the plaintiffs do not object to Bykhovsky's request for reimbursement of expenses, he is entitled to $2,120.17 for his outlays connected with the case.

### 3. Request for an evidentiary hearing

Urban suggests in his reply brief that the Court should determine whether there should be an evidentiary hearing. The Seventh Circuit recently held that "[a] district court is not required to hold an evidentiary hearing on attorney's fees where a party has an opportunity to respond and make specific objections to the fee petition." *Royce v. Michael R. Needle P.C.*, 950 F.3d 481, 488 (7th Cir. 2020). In this case, the attorneys, including Urban, have had ample opportunity to make and respond to arguments regarding attorney's fees and costs. Some of them may not have taken advantage of those opportunities, but under the circumstances an evidentiary hearing is unwarranted and in any event unlikely to affect the outcome of the dispute.

Accordingly, after subtracting the reasonable value of the services performed by the other attorneys from the $333,333.33 contingency fee amount, the Court will award Korb $274,680.83 in fees and of $32,148.60 for expenses. In total, the reimbursement of costs for attorneys is $35,330.91.

**Conclusion**

For the foregoing reasons, the Court resolves attorneys Urban, Shannon, Korb, and Bykhovsky's motions to award attorney fees and expenses as follows.  With regard to attorney fees, Korb is awarded $274,680.83, Bykhovsky is awarded $52,590, and Shannon is awarded $6,062.50.  With regard to expenses, Korb is entitled to $32,148.60, Bykhovsky is entitled to $2,120.17, and Urban is entitled to $1,062.14. After accounting for attorney expenses, the remaining recovery for the plaintiffs in this case—plaintiff Marina's heirs and her mother, Lidia—is $631,335.76.  The Court approves plaintiffs' petition to approve settlement [dkt. no. 231] consistent with these rulings and terminates all of the attorneys' motions for attorney's fees and costs [dkt. nos. 215, 219, 222, 229].  Attorney Korb is directed to submit a draft order consistent with the Court's ruling by February 10, 2021, consistent with the directions for digital submission of orders found on the undersigned judge's web page.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  February 5, 2021